***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence and receive further evidence. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris, with modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing, and in the executed Pre-Trial Agreement, as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission. *Page 2 
2. The employee-employer relationship existed between Plaintiff and Defendant-Employer on December 20, 2008.
3. There is no question as to misjoinder or nonjoinder of any parties, and the parties are properly before the Industrial Commission.
4. Defendant-Employer is insured, and the third-party administrator is Corvel Corporation.
5. Plaintiff alleges she was injured on December 20, 2008.
6. Plaintiff's average weekly wage and compensation rate will be determined by an accurate Form 22.
 ********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms and filings
 • Exhibit 3: Plaintiff's medical records (including additional records received post-hearing)
 • Exhibit 4: Transcript of Plaintiff's recorded statement
 • Exhibit 5: Plaintiff's discovery responses
 • Exhibit 6: Plaintiff's time sheets
 • Exhibit 7: Plaintiff's letter of resignation
The following document was accepted into evidence as a Plaintiff's Exhibit:
 • Exhibit 1: Employee's Initial Report of Injury
A transcript of the deposition of the following was also received post-hearing: *Page 3 
 • Dr. Mark Hedrick (with Defendant's Exhibit 1)
 *********** EVIDENTIARY RULINGS
1. Defendant's Motion to the Full Commission to Consider Additional Evidence filed October 8, 2010 is allowed. The short term disability records marked as Defendant's Exhibit B and Defendant's Exhibit C to Defendant's Motion are a part of the evidentiary record in this case.
2. Plaintiff's payroll records from the time period from December 1, 2008 to October 31, 2009 submitted by Defendant on April 29, 2011 and May 4, 2011, are a part of the evidentiary record in this case.
 *********** ISSUES
1. Whether Plaintiff sustained a compensable injury by accident on December 20, 2008?
2. If so, to what compensation, if any, is Plaintiff entitled?
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff is 49 years old, with a date of birth of August 21, 1962. She holds a bachelor's degree in social work. Before her employment with Defendant-Employer, Plaintiff worked as a substance abuse counselor. *Page 4 
2. Plaintiff began working for Defendant-Employer as a correctional officer at Swannanoa Correctional Institution in October 2007.
3. As of December 2008, Plaintiff was working the third shift, from 6:00 p.m. to 6:00 a.m.
4. Part of Plaintiff's regular duties in her job as a correctional officer involved making rounds to check the perimeter of the facility and check doors of buildings to ensure that they were secured.
5. On the night of December 20, 2008, between 8:00 p.m. and 9:00 p.m., Plaintiff approached a building in order to make sure that a door was locked. A construction crew had been working in the building earlier that day, and there was a concern that the doors might not be locked. It was raining hard at the time and the wind was blowing. As a result, there was water running through the paved area where Plaintiff was walking. There were also potholes and puddles in the area, and a great deal of mud. The wind and rain made it difficult for Plaintiff to see, and as a result, she used a flashlight.
6. As Plaintiff was stepping up approximately four or five inches onto a concrete sidewalk outside the building, she tried to avoid puddles of water, causing her to mis-step and turn her left ankle. Plaintiff felt two pops in her left ankle. She was wearing high-topped boots and did not fall to the ground.
7. Plaintiff hobbled to complete her inspection of the building and then returned to the gatehouse where she reported the incident to her supervisor who ultimately sent Plaintiff home. *Page 5 
8. In her "Employee's Initial Report of Injury" form, which she completed on December 22, 2008, two days after her injury, Plaintiff recounted that her injury had occurred as she was trying to step over puddles of water.
9. The Full Commission places greater weight on the first report of Plaintiff's injury contained in her "Employee's Initial Report of Injury" form than on Plaintiff's later statements in this claim. By the greater weight of the evidence, the presence of puddles of water during a rainstorm was an unusual occurrence on Plaintiff's rounds, and played a significant role in Plaintiff injuring her left ankle. Although Plaintiff was performing her normal duties, namely, inspecting the doors to a building, when she injured her left ankle, she could not perform these duties in a routine manner due to the rainstorm and resulting mud and puddles.
10. Plaintiff was out of work from December 20, 2008 through May 6, 2009, following her left ankle injury.
11. Plaintiff sought and received medical treatment for her left ankle condition. She was ultimately referred to Dr. Hedrick, an orthopedic surgeon.
12. Plaintiff presented to Dr. Hedrick on January 22, 2009 and reported that she had stepped up and felt a popping sensation in her left ankle. Dr. Hedrick diagnosed Plaintiff with a post-traumatic pathology to her peroneal tendons in her left ankle.
13. Dr. Hedrick assigned sedentary work restrictions to Plaintiff, which Defendant-Employer could not accommodate because of its policy that correctional officers must be able to perform at full-duty in order to work. Dr. Hedrick opined that, given the essential functions of a correctional officer, Plaintiff could not have worked in that job from December 20, 2008 through May 6, 2009 because of her left ankle condition. *Page 6 
14. Dr. Hedrick performed surgery on Plaintiff's left ankle on February 5, 2009. His post-surgical diagnosis was post-traumatic tenosynovitis about Plaintiff's peroneal tendons.
15. Dr. Hedrick kept Plaintiff on light-duty restrictions following the surgery.
16. By May 6, 2009, Plaintiff was reporting very little pain and swelling, with only minor discomfort in her left ankle, and improved range of motion. Dr. Hedrick released Plaintiff to return to full-duty work in her correctional officer job as of May 8, 2009.
17. Following the full-duty release, Plaintiff returned to work with Defendant-Employer as a correctional officer.
18. Dr. Hedrick opined that there was no reason why Plaintiff could not perform the full duties of a correctional officer following her release. He opined that she could run without difficulty and that it was very unlikely that she would have any problems related to her ankle injury in the future.
19. Dr. Hedrick assigned a 5 percent permanent partial impairment rating to Plaintiff's left foot.
20. The medical treatment that Plaintiff received for her ankle condition was reasonably required to effect a cure, provide relief and/or lessen Plaintiff's period of disability.
21. Plaintiff resigned from her job with Defendant-Employer in September 2009. In her resignation letter dated September 19, 2009, Plaintiff alludes to problems receiving her pay, and indicates that she plans to return to school to obtain a master's degree, since she was not permitted to work a reduced schedule in order to attend school pursuant to Defendant's policy. Plaintiff's resignation letter does not indicate that her decision to resign was based on any physical limitations stemming from her work related ankle injury. *Page 7 
22. While Plaintiff contends that her decision to resign was due in part to physical limitations with respect to her ability to run and respond to emergencies following her return to work, the Full Commission finds by the greater weight of the evidence that Plaintiff resigned for reasons unrelated to her compensable ankle injury.
23. In December 2009, Plaintiff started working part-time as a substance abuse specialist with the Mary Benson House. As of the date of the hearing before the Deputy Commissioner, she was pursuing her master's degree through East Tennessee State University.
24. According to the Form 22 submitted in this claim, Plaintiff earned $31,442.01 over the 52 weeks preceding her December 20, 2008 injury. As such, Plaintiff's average weekly wage for this claim is $604.65, which yields a compensation rate of $403.12.
25. During the period from December 21, 2008 to January 16, 2009, Plaintiff was paid using sick leave and annual leave, and she received two to three days of pay for holidays.
26. Plaintiff received disability benefits from a plan totally funded by Defendant for the period from February 19, 2009 to May 7, 2009 in the amount of $3,125.36. Of that amount, Plaintiff was required to refund $1,314.92 due to overpayment. It is unclear from the record whether those figures represent gross or net amounts.
 ***********
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to her left ankle on December 20, 2008. N.C. Gen. Stat. § 97-2(6). *Page 8 
2. As a correctional officer, pursuant to N.C. Gen. Stat. § 143-166.14 and § 143-166.16, Plaintiff was entitled to salary continuation in lieu of compensation from December 20, 2008 through May 6, 2009.
3. Plaintiff is entitled to have Defendant pay for the medical treatment she received for her compensable left ankle injury, including but not limited to diagnostic testing and imaging, prescriptions, surgery, physical therapy, braces and mileage. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. Plaintiff is entitled to permanent partial disability compensation in the amount of $403.12 for 7.2 weeks, for a total of $2,902.46. N.C. Gen. Stat. § 97-31.
5. Defendant is entitled to a credit for payments made to Plaintiff under the Disability Income Plan of North Carolina, which was totally funded by Defendant, less the amount refunded by Plaintiff for overpayment. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to Plaintiff salary continuation under N.C. Gen. Stat. § 143-166.14 from December 20, 2008 to May 6, 2009. Said amount has accrued and shall be paid to Plaintiff in a lump sum subject to the attorney's fee provision below and a dollar for dollar credit to Defendant for all payments of short-term disability benefits made under the Disability Income Plan of North Carolina, less the amount refunded by Plaintiff for overpayment.
2. Subject to the attorney's fee provision below, Defendant shall pay to Plaintiff permanent partial disability compensation, in a lump sum, in the amount of $2,902.46. *Page 9 
3. As Plaintiff's attorney's fee, Defendant shall deduct 25 percent of the lump sum amount(s) due under Paragraphs 1 and 2 above and pay said portion(s) directly to Plaintiff's counsel.
4. Defendant shall pay for the medical treatment Plaintiff received for her compensable left ankle condition, including but not limited to diagnostic testing and imaging, prescriptions, surgery, physical therapy, braces and mileage. To any extent that Plaintiff and/or any third party payor(s) paid for any such treatment, Defendant shall reimburse such payor(s) when bills for the same have been submitted in accordance with Industrial Commission procedures.
5. Defendant shall pay the costs. As part of their costs, if Defendant has not done so already, Defendant shall pay an expert witness fee to Dr. Hedrick, the amount of which the Deputy Commissioner set at $600.00 in an Order filed on February 22, 2010.
This the ___ day of June, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ DANNY LEE McDONALD *Page 10 
COMMISSIONER *Page 1